UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHARON S.,<br><br>                   Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                  Defendant. | CASE NO. C22-5153-MAT<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff appeals a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for disability benefits after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1974.[1] Plaintiff has at least a high school education and previously worked as a case manager and a composite job of telephone solicitor, customer service clerk, and payroll clerk. AR 22. Plaintiff filed an application for Disability Insurance Benefits

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

(DIB) on February 26, 2020, alleging disability beginning June 15, 2018. AR 13. The application was denied at the initial level and on reconsideration. On January 19, 2021, the ALJ held a telephone hearing and took testimony from Plaintiff and a vocational expert (VE). AR 30–55. At the hearing, Plaintiff amended the alleged onset date to January 1, 2020. AR 13, 37. On April 2, 2021, the ALJ issued a decision finding Plaintiff not disabled. AR 13–25. Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on January 19, 2022 (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (2000).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

ORDER
PAGE - 2

since January 1, 2020, the amended alleged onset date. AR 15.

At step two, the ALJ found that Plaintiff has the following severe impairments: rheumatoid arthritis, generalized anxiety disorder, major depressive disorder, panic disorder, and post-traumatic stress disorder (PTSD). AR 15.

At step three, the ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. AR 16–18.

At step four, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [T]he claimant can stand and walk for a total of four hours in an eight-hour workday and sit for six hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds. The claimant can occasionally reach overhead; frequently reach in all other directions; and frequently handle, finger and feel with the bilateral upper extremities. The claimant should avoid concentrated exposure to extreme temperatures, vibration and hazards. The claimant can perform simple, routine work with no more than occasional workplace changes. In addition, the claimant can tolerate occasional superficial contact with co-workers and the public.

AR 19. With that assessment, the ALJ found Plaintiff unable to perform any past relevant work. AR 22–23.

At step five, the ALJ found that Plaintiff retains the capacity to make an adjustment to work that exists in significant numbers in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing the requirements of representative occupations such as collator operator, small products assembler I, and document preparer. AR 23–24.

Plaintiff raises the following issues on appeal: (1) Whether the VE testimony is consistent with the Dictionary of Occupational Titles (DOT); (2) whether the RFC is supported by substantial evidence; and (3) whether the ALJ properly considered Plaintiff's subjective allegations. Plaintiff

requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

**1. VE Testimony**

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite her identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Based on the VE's testimony, the ALJ concluded that Plaintiff would be able to perform the requirements of collator operator, small products assembler I, and document preparer. AR 24–25.

Plaintiff argues that the ALJ failed to resolve an apparent conflict between the RFC and the Level 3 Reasoning required for performing the job of document preparer. Dkt. 8, at 4–5. Social Security regulations require the ALJ to inquire whether the VE's testimony is consistent with the DOT and to obtain a reasonable explanation for any apparent conflict. SSR 00-4p; *see also Massachi v. Astrue*, 486 F.3d 1149, 11452–53 (9th Cir. 2007). Here, the VE testified that a person limited to simple, routine work would be able to perform the job of document preparer. AR 51–52. The DOT describes that the job of document preparer requires Level 3 Reasoning. DOT 249.587-018, 1991 WL 672349 (document preparer, microfilming). The Ninth Circuit has held that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); *accord Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). Because the ALJ did not identify or attempt to resolve the conflict between Plaintiff's RFC and the Level 3 Reasoning required to perform the job of document preparer, the ALJ erred by relying on the VE testimony and finding that Plaintiff could perform the requirements of a document preparer at step five.

The Commissioner argues that any error in the ALJ's failure to resolve an apparent conflict

between the RFC and Level 3 Reasoning is harmless in this case because the record shows that Plaintiff has the ability to perform the challenged jobs. Dkt. 9, at 4. The Commissioner argues this case is distinguishable from *Zavalin*—in which the Ninth Circuit found the ALJ's failure to reconcile the conflict was not harmless—because, unlike the claimant in *Zavalin*, Plaintiff has no intellectual impairments, completed four or more years of college, and has a history of skilled work. *Id.* at 5. The Commissioner's argument is unpersuasive. Here, the ALJ specifically limited Plaintiff to performing simple, routine work considering Plaintiff's "problems with her short-term memory, difficulty adjusting to changes in routine and statements that she often experiences 'mental fogginess' and difficulty concentrating secondary to her rheumatoid arthritis and associated symptoms," which difficulties the ALJ found "demonstrate the claimant would have greater difficulty remembering and applying information." AR 22. Moreover, the Ninth Circuit in *Zavalin* found that "there is no rigid correlation between reasoning levels and the amount of education that a claimant has completed." *Zavalin*, 778 F.3d at 847. Because the ALJ found that Plaintiff's mental impairments prevent her from performing job requirements consistent with Level 3 Reasoning, the ALJ's failure to resolve the conflict between the RFC and the Level 3 Reasoning required of a document preparer was not harmless.

Plaintiff further argues that the job of document preparer does not exist in significant numbers in the national economy. Dkt. 8, at 5–6. Plaintiff requests that the Court take judicial notice of the information in *Wood v. Berryhill*, 3:17-cv-5430, 2017 WL 6419313 (W.D. Wash. 2017), in which a vocational consultant testified that the job of document preparer does not exist in significant numbers. Dkt. 8, at 5–6. "The reviewing court is limited to considering the contents of the administrative record itself." *Delgadilla v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *1 (9th Cir. Feb. 1, 2022) (citing 42 U.S.C. § 405). Accordingly, expert testimony from an entirely

different case is not within the scope of this Court's review. Additionally, because Plaintiff did not challenge the VE's testimony regarding job numbers at the administrative level, Plaintiff has waived her challenge to the VE's testimony regarding job numbers on appeal. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) ("[W]hen a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel.").

Plaintiff next argues that the ALJ failed to resolve an apparent conflict between the RFC and the frequent overhead reaching required for all three jobs identified at step five. Dkt. 8, at 6–7. The DOT does not contemplate how often an individual must reach overhead.[2] Where a task is not specifically identified in the DOT, an expert's testimony conflicts with the DOT only if it is "at odds with the [DOT's] listing of requirements that are essential, integral, or expected." *Gutierrez*, 844 F.3d at 808. The DOT defines the requirements of the jobs identified at step five as follows: a document preparer "[p]repares documents . . . for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices"; a collator operator "[t]ends machine that assembles pages of printed material in numerical sequence"; and a small products assembler I positions parts in relation to each other, works on an assembly line, and loads and unloads previously setup machines. DOT 249.587-018, 1991 WL 672349 (document preparer, microfilming); DOT 208.685-010, 1991 WL 671753 (collator operator); DOT 706.684-022, 1991 WL 679050 (assembler, small products I). Based on these general descriptions, frequent overhead reaching is not apparently or obviously an essential, integral, or expected task of the jobs identified at step five, and it is likely and foreseeable that an individual limited to occasional overhead

---

[2] "While 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' not every job that involves reaching requires the ability to reach overhead." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) (quoting SSR 85-15)).

ORDER
PAGE - 6

reaching and frequent reaching in all other directions would be able to perform the duties required of a document preparer, collator operator, and small products assembler I. Therefore, Plaintiff has not shown that there is an apparent or obvious conflict between the VE's testimony and the DOT's reaching requirements for the jobs identified at step five.

Although the ALJ erred by failing to resolve the conflict between the RFC and the Level 3 Reasoning required of a document preparer, this error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded by regulation on other grounds* (an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination'" (citation omitted)). With the assistance of the VE, the ALJ found that Plaintiff could also perform the requirements of a collator operator and small products assembler I, which jobs represent approximately 26,000 and 191,000 jobs in the national economy, respectively. AR 24, 51. Because the ALJ identified other jobs Plaintiff could perform that exist in significant numbers in the national economy, the ALJ's error in finding Plaintiff capable of performing the requirements of document preparer was harmless.

**2. RFC**

At step four, the ALJ must identify the claimant's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis. *See* 20 C.F.R. § 404.1545; SSR 96-8p. The RFC is the most a claimant can do considering his limitations or restrictions. *See* SSR 96-8p. The ALJ must consider the limiting effects of all of the claimant's impairments, including those that are not severe, in assessing the RFC. 20 C.F.R. § 404.1545(e); SSR 96-8p.

Plaintiff argues that the ALJ did not clearly translate the medical evidence into the RFC and that the RFC is not supported by any medical opinions. Dkt. 8, at 12–13. "The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v.*

*Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Accordingly, the ALJ's RFC finding need not directly correspond to a specific medical opinion but may incorporate the opinions by assessing limitations entirely consistent with, even if not identical to, limitations assessed by the physician. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (the ALJ properly incorporates medical findings by assessing limitation that are "entirely consistent" with a physician's limitations). Further, an ALJ's "overinclusion of debilitating factors is harmless." *See Johnson*, 60 F.3d at 1436 n.9 ("[I]f a person can do a job that requires increased concentration, the claimant is also capable of performing work that required less concentration."). The ALJ found the medical opinions of state agency medical and psychological consultants generally persuasive; however, the ALJ assessed additional standing, walking, postural, and manipulative limitations than those assessed in the consultants' opinions considering Plaintiff's subjective complaints and symptom testimony regarding the effects of her rheumatoid arthritis and joint paint. AR 21–22. Plaintiff has not identified any error in the ALJ's incorporation of the medical consultants' opinions into the RFC. Further, the additional limitations assessed by the ALJ in this case only benefit the Plaintiff. *See Nacoste-Harris v. Berryhill*, 711 Fed. Appx. 378, 379–80 (9th Cir. 2017) (no reversible error from "an ALJ's inclusion of additional RFC limitations that benefits, rather than prejudices," the claimant). Therefore, Plaintiff has not shown that the ALJ erred by including in the RFC greater limitations than those identified in the consultants' opinions.

**3. Subjective Testimony**

The ALJ must provide specific, clear, and convincing reasons, supported by substantial evidence, for rejecting a claimant's subjective symptom testimony.[3] *Trevizo v. Berryhill*, 871 F.3d

---

[3] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

664, 678 (9th Cir. 2017); *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

Plaintiff alleges that she cannot work because her mental impairments cause her to have severe episodes of unmanageable depression and makes her unable to function, get out of bed, engage with her family, and fulfill her duties at work. AR 258. At the hearing, Plaintiff testified that she experiences episodes of crying spells, panic attacks, and post-traumatic stress several times a week. AR 41–42. Plaintiff further alleges that her rheumatoid arthritis causes her significant pain throughout her body daily, that her pain gets worse as she ages, and that her impairments affect her ability to squat, kneel, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. AR 258, 263. At the hearing, Plaintiff testified that, due to her rheumatoid arthritis, her upper body is very weak; that she has difficulty making repetitive motion, lifting light weight, sitting, and typing, which causes swelling in her joints, wrists, and fingers; and that she cannot sit and stand in a working position for eight hours in a day. AR 40.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 19.

    a. Rheumatoid arthritis symptoms

Plaintiff argues that the ALJ improperly rejected Plaintiff's symptom testimony by

characterizing Plaintiff's rheumatoid arthritis "treatment of prescription pain medication and weekly injections as conservative." Dkt. 8, at 15. Citing *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), Plaintiff argues that her long-term etanercept therapy via injections is not conservative treatment. Dkt. 8, at 15. Plaintiff's argument fails to show error in the ALJ's decision for several reasons. First, the ALJ did not expressly characterize Plaintiff's rheumatoid arthritis treatment as "conservative." Second, *Garrison* is not analogous to this case. The injections in *Garrison* were epidural steroid injections to the neck and lower back, which the Ninth Circuit doubted qualified as "conservative" medical treatment. *Garrison*, 759 F.3d at 1015 n.20. Here, by contrast, Plaintiff's etanercept injections were subcutaneous (under the skin) and self-administered. *See* AR 1045 (noting that Plaintiff experienced more pain when she did not take her weekly injection). Finally, unlike *Garrison*, the record indicates that Plaintiff's rheumatoid arthritis symptoms were "well controlled" and "doing well" under her treatment regimen. *See* AR 368, 997, 1039. Therefore, Plaintiff has not shown that the ALJ improperly characterized Plaintiff's rheumatoid arthritis treatment as "conservative."

Plaintiff next argues that the ALJ improperly rejected Plaintiff's symptom testimony by "plac[ing] undue weight on the evidence of improvement." Dkt. 8, at 15. Regarding Plaintiff's rheumatoid arthritis, the ALJ found Plaintiff's subjective testimony inconsistent with evidence that Plaintiff's symptoms "have been responsive to and well-controlled with her current drug therapy regimen," that Plaintiff "has not pursued alternative or more invasive treatment modalities nor required frequent emergency room treatment or extended hospitalization for any recent relapses or flare-ups related to her rheumatoid arthritis," and that Plaintiff "has not required evaluation or routine follow-up examination since December 16, 2019." AR 19. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*,

439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ cited medical records stating that Plaintiff's rheumatoid arthritis symptoms were "well controlled" and "doing well" with treatment. AR 19 (citing AR 368, 997, 1039). Further, there is no evidence in the record indicating that Plaintiff sought treatment or medical attention related to debilitating symptoms from her rheumatoid arthritis during the relevant period. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program"); *Burch*, 400 F.3d at 681 (the ALJ may consider lack of consistent treatment in evaluating subjective symptom testimony). Therefore, substantial evidence supports the ALJ's finding that Plaintiff's subjective symptom testimony was inconsistent with evidence that Plaintiff's rheumatoid arthritis symptoms were well-controlled with treatment, and the ALJ's reasoning was specific, clear, and convincing.

Plaintiff argues that the ALJ was required to develop the record further because the ALJ did not ask Plaintiff to explain the December 2019 follow-up and because there was no evidence in the record addressing Plaintiff's current functioning. Dkt. 8, at 16. Plaintiff's argument is unpersuasive. The ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Here, the ALJ did not find that the evidence was ambiguous or inadequate to evaluate Plaintiff's symptom testimony. Further, the ALJ has no duty to develop the record in order to establish disability. *Id*. at 461; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("[A]t all times, the burden is on the claimant to establish her entitlement to disability insurance benefits.").

Plaintiff next argues that the ALJ improperly discounted Plaintiff's symptom testimony by

ORDER
PAGE - 11

finding it inconsistent with evidence of Plaintiff's activities. Dkt. 8, at 16. An ALJ may consider daily activities in evaluating a claimant's testimony regarding their physical limitations and the severity of their symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling pain." (emphasis in original)). The ALJ found that Plaintiff was able to maintain her hygiene and personal care needs independently and participate in activities that require fine and gross manipulation skills, such as gardening, painting, and shopping online. AR 20. The ALJ further noted that Plaintiff enjoyed physical activities, such as jogging, hiking, and participating in dragon boat team events. AR 20. Substantial evidence does not support the ALJ's findings. Plaintiff reported that she "very rarely" washes her hair, that sometimes she cannot make herself shower, that she needs reminders to get up, get dressed, and shower, and that she shops online once or twice a month for dog toys and small items. AR 40, 259–61. Plaintiff further testified that she paints for coping and managing her anxiety, but there are no details in the record regarding what the painting activities involved. AR 42, 1038. This evidence does not reasonably demonstrate that Plaintiff is able to maintain her personal care needs independently or that Plaintiff's online or painting activities required a level of fine or gross motor skills that are reasonably inconsistent with Plaintiff's testimony or reasonably transferrable to a work setting. AR 40, 261; *see also Fair*, 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . ."). Finally, although Plaintiff reported that she enjoys hobbies, such as gardening, jogging, hiking, and races, Plaintiff also reported in her March 2020 Adult Function Report that she no longer does any of these activities. AR 262, 1166. Even if the record indicated that Plaintiff was able to engage in some physical

ORDER
PAGE - 12

activity, the ALJ failed to identify how and why such evidence is inconsistent with Plaintiff's testimony.[4] Therefore, the ALJ erred by finding Plaintiff's testimony regarding debilitating rheumatoid arthritis symptoms inconsistent with evidence of Plaintiff's activities, and the ALJ's reasoning was not specific, clear, convincing, or supported by substantial evidence.

Nevertheless, the ALJ's error was harmless in this case because the ALJ cited other valid reasons for discounting Plaintiff's testimony regarding debilitating rheumatoid arthritis symptoms, including inconsistency with evidence that Plaintiff's rheumatoid arthritis symptoms were well-controlled with treatment. *See Molina*, 674 F.3d at 1115 (harmless error where the ALJ gives other valid reasons for discounting a plaintiff's subjective testimony).

      b. Mental health symptoms

Plaintiff argues that the ALJ improperly rejected Plaintiff's subjective testimony by placing undue weight on evidence of improvement in Plaintiff's mental health symptoms and that the ALJ failed to consider evidence that Plaintiff struggled with suicidal ideation. Dkt. 8, at 15–16. The ALJ found that Plaintiff "has managed her symptoms with various modalities including medication management; individual, supportive psychotherapy treatment; ACT group sessions; and previously underwent electroconvulsive (ECT) therapy for severe depression" and that Plaintiff "denied engaging in any self-harming behaviors, denied experiencing homicidal or suicidal ideations or intentions nor has the claimant required frequent emergency psychiatric treatment or inpatient psychiatric hospitalization for an altered mental status, dissociative events or psychosis during the adjudicatory period." AR 20–21. Substantial evidence does not support the ALJ's

---

[4] The Commissioner argues that other evidence in the record indicates that Plaintiff engaged in greater activity than alleged, such as walking four miles a day and planting a garden. Dkt. 9, at 13 (citing AR 1009). However, Plaintiff has not alleged that her impairments affect her ability to walk. *See* AR 40, 263. Further, the record provides no details regarding what Plaintiff's gardening activities involved. *See Trevizo*, 871 F.3d at 682 (finding that the ALJ did not properly reject the claimant's testimony based on evidence of a claimant's childcare activities when the record provided no details as to what the activities involved).

findings. The record contains evidence that Plaintiff's depression and anxiety symptoms fluctuated throughout the relevant period and that Plaintiff was assessed with moderate to high risk for suicide on several occasions. *See, e.g.*, AR 338, 340, 349, 1042, 1047, 1083, 1143–44, 1158, 1182, 1228. Additionally, the record indicates that Plaintiff was hospitalized for several days in June 2020 related to a flare in her mental health symptoms. AR 1044–82. The ALJ failed to discuss or consider this evidence when evaluating Plaintiff's symptom testimony. *See Garrison*, 759 F.3d at 1017 ("[W]hile discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."). Therefore, the ALJ failed to provide specific, clear, or convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective testimony regarding the severity of her mental health symptoms.

The ALJ's error in evaluating Plaintiff's mental health symptoms was not harmless. Although the RFC limits Plaintiff to "simple, routine work with no more than occasional workplace changes" (AR 21), the RFC does not reasonably account for Plaintiff's allegations that episodes of severe depression, panic attacks, and stress related to her PTSD make her unable to function, get out of bed, or fulfill job duties. *See* AR 258. On remand, the ALJ is directed to reassess Plaintiff's subjective testimony regarding her mental impairments and reevaluate the findings at steps three through five as warranted by further consideration of the evidence.

## CONCLUSION

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceedings.

DATED this 17th day of October, 2022.

MARY ALICE THEILER
United States Magistrate Judge